# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| InMode Ltd., and Invasix Inc.<br><br>Plaintiffs,<br><br>v.<br><br>DHGate Seller "abfl", et al.<br><br>Defendants. | Case No. SACV 24-1803-MWF(ADSx)<br><br>**ORDER GRANTING MOTION FOR A PRELIMINARY INJUNCTION** |

THIS CAUSE came before the Court upon Plaintiffs InMode Ltd. and Invasix Inc.'s ("Plaintiffs" or "InMode") Motion for a Preliminary Injunction ("PI") against Defendants. The Court held oral argument on Plaintiffs' motion on August 28, 2024. Having reviewed the papers and heard oral argument and reviewed the evidence in support of or against the motion, the Court GRANTS Plaintiffs' motion for a preliminary injunction.

I. BACKGROUND[1]

Plaintiffs are the registered owner and exclusive United States distributor of Morpheus®-branded microneedling products used in aesthetic skin care. InMode owns numerous trademarks used in connection with the manufacture and distribution of InMode's Morpheus® brand microneedling devices and needle cartridge accessories ("Morpheus® Products"). Among these trademarks are United States Registration Nos. 6182558 (MORPHEUS) and 6021401 (INMODE), (collectively the "InMode Trademarks").

Defendants are individuals and/or business entities of unknown makeup who are believed to use, or assist others in using, the Internet based e-commerce stores on the e-commerce platform DHGate.com ("DHGate") and are operating under the seller identification names set forth in Exhibit 1 to the Complaint (the "Seller IDs").

Plaintiffs recently learned of Defendants' sale of counterfeit versions of InMode's products. InMode then retained Brand Security Corporation ("Brand Security"), a licensed private investigative firm, to investigate Defendants' promotion and sale of counterfeit versions of InMode's products on the e-commerce platform DHGate. Brand Security accessed the e-commerce stores and marketing and promotion sites operating under Defendants' Seller IDs[2] and placed

---

[1] The facts herein are taken from Plaintiffs' Complaint and Application for *Ex Parte* Relief.

[2] A complete list of all 22 Defendants and their Seller IDs is found in Exhibit 1 attached to the Complaint.

orders from each Defendant for the purchase of various alleged counterfeit Morpheus® Products. The products received from various Defendants were shipped to Brand Security in this Judicial District. *See* Declaration of Mariela Fernandez ("Fernandez Decl.") at ¶ 9 and Exhibits 1-22 thereto.[3]

These orders were processed online, and following the submission of each order, Brand Security finalized payment for the various purported Morpheus® Products ordered from Defendants via Defendants' respective payment accounts on the DHGate platform. At the conclusion of the process, web page screencaptures of the various purported Morpheus® Products offered for sale and/or ordered via Defendants' Seller IDs, together with photographs of many of the products received, were sent to InMode's representative for inspection. *See* Declaration of Rafael Lickerman ("Lickerman Decl.") at ¶ 25. InMode's representative, Mr. Lickerman reviewed and visually inspected web page screen captures reflecting the purported Morpheus® Products identified and captured by Brand Security, together with photographs of certain received goods, and determined that the Defendants' purported Morpheus® Products were not authentic. *See id.*

On August 16, 2024, Plaintiffs filed, under seal, an *Ex Parte* Application for Entry of Temporary Restraining Order ("TRO"), Restraint of Asset Transfer, Motion for Expedited Discovery, and Motion for Alternative Service, which also requested a PI against Defendants upon expiration of the TRO. *Id.*

On August 16, 2024, the Court granted Plaintiffs' Application for TRO, Restraint of Asset Transfer, Motion for Expedited Discovery, and Motion for

---

[3] Certain Defendants use their Seller IDs in tandem with electronic communication to complete their offer and sale of Morpheus®-branded products. Specifically, Defendants use private messaging applications and/or services such as WhatsApp to electronically communicate with potential consumers to complete their offer and sale of counterfeit products. Defendants' relevant contact information is listed on Exhibit 1 to the Complaint. *See, e.g.,* Fernandez Decl. at ¶¶ 57, 118, 161, 170, 202, 224.

Alternative Service. The Court allowed the Defendants and any party or non-party served with the TRO to object to the restraints on or before August 26, 2024. No filing has been made with the Court by any party or non-party on or before August 26, 2024.

On August 23, 2024, Plaintiffs served notice of the TRO on and sought expedited discovery from non-party DHGate Group a/k/a Digital Trading Sci & Tech (Beijing) Co. Ltd. DHGate Group responded to the Plaintiffs' request confirming that DHGate had frozen the 22 Defendants' seller accounts as ordered.

On August 23, 2024, Plaintiffs posted the requisite TRO bond with the Clerk of the Court. Also on August 23rd, Plaintiffs served all Defendants via alternate means as the Court authorized.[4] On that same day Plaintiffs filed a declaration certifying that service was made on Defendants and non-party DHGate Group, and describing how service was conducted.

On August 26, 2024, all served Defendants were given an opportunity to respond to the application for the PI and no response was made. On August 28, 2024, the Court held oral argument on Plaintiffs' motion to convert the TRO to a preliminary injunction and the following findings are made.

## II. LEGAL STANDARD

This Court has authority to grant a preliminary injunction under 15 U.S.C. § 1116(d), Fed. R. Civ. P. 65, The All Writs Act, 28 U.S.C. § 1651(a), and this Court's inherent authority. To obtain a preliminary injunction in the Ninth Circuit, a plaintiff may proceed under either of two tests. The first test assesses the traditional factors: (1) the plaintiff will suffer an irreparable injury if injunctive

---

[4] As noted in the certificate of service, Plaintiffs were unable to serve three defendants (ytlighting, hitmantrade, and chuangke2018) because those defendants' Seller IDs and Store IDs were inactive on DHGate platform as of August 23, 2024 and Plaintiffs had no other means to contact those defendants. As DHGate has provided additional contact information for these defendants, Plaintiffs shall serve those three defendants through the email addresses provided.

relief is not granted; (2) the plaintiff will probably prevail on the merits; (3) the plaintiff shows the balance of equities favors granting the injunction; and (4) an injunction serves the public interest. *See Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1319 (9th Cir. 1994). Under the second test, a plaintiff may alternatively demonstrate "either: (1) a likelihood of success on the merits and the possibility of irreparable injury; or (2) that serious questions going to the merits were raised and the balance of hardships tips sharply in its favor." *Walczak v. EPL Prolong, Inc.*, 198 F.3d 725, 731 (9th Cir. 1999). These two options appear at opposite ends "of a single continuum, rather than two separate tests." *Id.* (quotations omitted). Accordingly, if plaintiff shows a higher degree of hardship, the court will accept a lower probability of success. *See id.*; *see also Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 822 (9th Cir. 1993).

Under 15 U.S.C. § 1117(a), a plaintiff may recover the illegal profits that a defendant gained through the sale of counterfeit products. District courts have the power to impose an asset freeze in cases where equitable relief is sought and when there is "a likelihood of dissipation of the claimed assets, or other inability to recover monetary damages, if relief is not granted." *Johnson v. Couturier*, 572 F.3d 1067, 1085 (9th Cir. 2009); *see also Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 883 n.4 (9th Cir. 2003) (A "district court has authority to issue asset-freezing injunction where equitable relief is sought, even though substantial money damages are also claimed") (citing *U.S. ex rel. Rahman v. Oncology Assocs.*, 198 F.3d 489, 494-99 (4th Cir. 1999)).

### III. ANALYSIS

InMode's pleadings, sworn declarations and Memorandum of Law support the following legal conclusions:

**1.    InMode Has a Substantial Likelihood of Success on the Merits.**

InMode's application supports that consumers are likely to be confused by Defendants' advertisement, promotion, sale, offer for sale, and/or distribution of

products bearing and/or using counterfeits, reproductions, and/or colorable imitations of the InMode Trademarks, and that the products Defendants are selling and promoting are unauthorized copy products that bear and/or use copies of the InMode Trademarks.

### 2. InMode Will Suffer Irreparable Injury Absent Immediate Injunctive Relief.

InMode has put forth evidence that, through the operation of twenty-two seller identities comprised of e-commerce stores and marketing materials, Defendants are operating Internet businesses which advertise, promote, offer for sale, and sell, products bearing and/or using counterfeit and infringing trademarks in violation of InMode's rights. Accordingly, there is good cause to believe that more counterfeit and infringing products bearing and/or using the InMode Trademarks will appear in the marketplace; consumers may be misled, confused, and disappointed by the quality of these products; InMode may suffer loss of sales for its genuine products; and Defendants' counterfeit products create an unnatural erosion of the legitimate marketplace.

### 3. The Balance of Harms Favors InMode.

InMode has put forth evidence that the harm to InMode—including damage to its reputation—outweighs the potential harm of restricting Defendants' trade. Defendants have no legitimate rights to sell counterfeit products, manufactured outside of the U.S. without FDA approval.

### 4. The Public Interest Favors Issuance of the Preliminary Injunction.

The evidence supplied by InMode supports that it is within the public interest to protect InMode's trademarks. The public has an interest in preventing against the sale of counterfeit products, particularly in this case, where Defendants' counterfeit Morpheus® Products can be sold to unsuspecting third parties for use in medical procedures.

### 5. The Requested Asset Freeze Is Warranted.

Under 15 U.S.C. § 1117(a), Plaintiffs may be entitled to recover, as an equitable remedy, the illegal profits gained through Defendants' distribution and sales of products bearing and/or using counterfeits and infringements of the InMode Trademarks. In light of the inherently deceptive nature of their counterfeiting business, and Defendants' apparent violation of the federal trademark laws, there is good reason to believe Defendants will hide or transfer assets beyond the jurisdiction of this Court unless those assets are restrained.

### IV. CONCLUSION

Based on Plaintiffs' Complaint, PI Motion, and evidentiary submissions, the Court concludes that Plaintiffs have satisfied the four-part test for injunctive relief. Accordingly, it is hereby ORDERED AND ADJUDGED that Plaintiffs' PI Motion is GRANTED. It is further ORDERED AND ADJUDGED as follows that:

1. Each Defendant, their officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with them having notice of this Order are hereby preliminarily restrained from:

   a. Manufacturing, making, buying, purchasing, importing, shipping, delivering, advertising, marketing, promoting, offering to sell, selling, or otherwise distributing or disposing of, in any manner, any counterfeit or infringing products, including but not limited to Morpheus® Products and any other products bearing the MORPHEUS® and INMODE® Trademarks.

   b. Manufacturing, making, buying, purchasing, importing, shipping, delivering, advertising, marketing, promoting, offering to sell, selling, or otherwise distributing or disposing of, in any manner, any purported InMode or Morpheus® Products that are not actually produced, imported, or distributed under Plaintiffs' control or supervision, or approved for sale in the United States by Plaintiffs in connection with the MORPHEUS® and INMODE® Trademarks;

   c. Committing acts calculated to cause purchasers to believe that

counterfeit or infringing Morpheus® Products originate with Plaintiffs when they do not;

    d. In any way infringing or damaging the MORPHEUS® and INMODE® Trademarks or the value or goodwill associated therewith;

    e. Attempting, causing, or assisting in any of the above-described acts, including but not limited to enabling others in the above-described acts, or passing on information to others to allow them to do so; and

    f. Forming or causing to be formed any corporation or other entity that engages in the above-described acts;

    g. Secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any products, not manufactured or distributed by Plaintiffs bearing and/or using the InMode Trademarks, or any confusingly similar trademarks; or (ii) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products bearing and/or using the InMode Trademarks, or any confusingly similar trademarks.

2. Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order shall immediately discontinue the use of the InMode Trademarks, or any confusingly similar trademarks within metatags or other markers within website source code, from use on any webpage (including as the title of any web page), from any advertising links to other websites, from search engines' databases or cache memory, and any other form of use of such terms which is visible to a computer user or serves to direct computer searches to Internet based e-commerce stores, registered by, owned, or operated by each Defendant, including the Internet based e-commerce stores operating under the Seller IDs.

3. Defendants shall not transfer ownership of the Seller IDs during the pendency of this Action, or until further Order of the Court.

4. Each Defendant shall preserve copies of all computer files relating to

the use of any of the Seller IDs and shall take all steps necessary to retrieve computer files relating to the use of the Seller IDs that may have been deleted before the entry of this Order.

5. Plaintiffs shall serve a copy of this Order upon Defendants and non-parties by alternative means, for good cause shown. Plaintiffs intend to serve Defendants and non-parties via available email and messaging system application (such as WhatsApp), as well as the DHGate messaging portal associated with each individual Defendant as listed in Exhibit 1 attached to the Complaint.

6. Upon receipt of notice of this Order, Defendants and all financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, including but not limited to payment processors associated with DHGate or any of its affiliates, and their related companies and affiliates, shall (i) immediately identify and restrain all funds in all financial accounts and/or sub-accounts associated with the Internet based e-commerce stores, operating under the Seller IDs, the store URLs, store numbers, and/or the e-mail addresses identified in Exhibit 1 to the Complaint, as well as any other accounts of the same customer(s); (ii) identify all other accounts which transfer funds into the same financial institution account(s) or any of the other financial accounts subject to this Order; (iii) restrain the transfer of all funds, as opposed to ongoing account activity, held or received for their benefit or to be transferred into their respective financial accounts, and any other financial accounts tied thereto; and (iv) immediately divert those restrained funds to a holding account for the trust of the Court.

7. The PI shall remain in effect until the Court orders otherwise.

8. This PI shall apply to the Seller IDs and any other seller identification names, e-commerce stores, private messaging accounts, domain names and websites, or financial accounts which are being used by Defendants for the purpose of manufacturing, distributing, offering for sale and/or selling counterfeit Morpheus® Products containing infringing versions of the InMode Trademarks at

issue in this action and/or unfairly competing with Plaintiffs.

9. Any Defendant or financial institution account holder subject to this PI may petition the Court to modify the asset restraint set out herein.

10. The PI shall no longer apply to any Defendant or associated Seller ID dismissed from this action or as to which Plaintiffs have withdrawn its request for a PI.

11. Pursuant to 15 U.S.C. § 1116(d)(5)(D) and Fed. R. Civ. P. 65(c), Plaintiffs posted bond in the amount of Ten Thousand Dollars and Zero Cents ($10,000.00), as payment of damages to which Defendants may be entitled for a wrongful injunction or restraint, during the pendency of this action, or until further Order of the Court;

12. The Court converts the bond Plaintiffs previously posted for the TRO into a PI bond that provides security for this Order. In the Court's discretion, the bond may be subject to increase should an application be made in the interest of justice.

13. Plaintiffs shall serve copies of this Order, on each Defendant by e-mail via their corresponding e-mail address, or on each Defendant via the e-mail/online contact form or other means of electronic contact provided on the Internet based e-commerce stores operating under the respective Seller IDs, or by providing a copy of this Order by e-mail to the marketplace platform, social media website, or image hosting website for each of the Seller IDs so that the marketplace platform, social media website, or image hosting website in turn, notifies each Defendant of the Order, or by other means reasonably calculated to give notice which is permitted by the Court.

14. The Court further dissolves the Order sealing this action and instructs the Clerk of the Court to make all prior filings available to the public. The Court further instructs the parties to proceed with future filings publicly, unless specific pleadings require sealing, which should be sought separately.

15. To the extent that any named Defendant should attempt to avoid the obligations of this Order by changing its Seller ID while continuing to operate under the same Store ID or using the same corporate account, this Order shall apply with full force and effect to any new Seller ID used by any of the named Defendants to distribute and offer for sale counterfeit Morpheus® Products unlawfully using infringing versions of the InMode Trademarks.

DONE AND ORDERED, this 3rd day of September 2024.

_____
Hon. Michael W. Fitzgerald
UNITED STATES DISTRICT JUDGE

cc: All counsel of record